UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DR. DAN GIURCA,

                            Plaintiff,

       -against-

                             Case No. 1-19-cv-07761-CS

GOOD SAMARITAN HOSPITAL, BON
SECOURS CHARITY HEALTH SYSTEM, and
WESTCHESTER MEDICAL CENTER HEALTH
NETWORK,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

---

GARFUNKEL WILD, P.C.
*Attorneys for Defendants*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT .........................................................................................................1

STATEMENT OF FACTS .............................................................................................................2

    The Hospital............................................................................................................................2

    The Allegations In The Amended Complaint .........................................................................3

    ERDS.......................................................................................................................................5

    Plaintiff's Lawsuit ..................................................................................................................7

ARGUMENT ................................................................................................................................7

THE COMPLAINT MUST BE DISMISSED
BECAUSE DR. GIURCA CANNOT STATE A CLAIM FOR RELIEF.......................................7

    **A.**    The Legal Standard ...................................................................................7

    **B.**    Dr. Giurca Cannot State A Religious
                Discrimination Claim Under Title VII Based On The ERDs.................................9

    **C.**    Dr. Giurca Cannot State A Claim For Failure To
                Provide A Reasonable Accommodation Based On The ERDs ...........................11

    **D.**    Dr. Giurca Cannot State A Claim For Retaliation Under Title VII.....................12

    **E.**    Dr. Giurca Is Not Entitled To Injunctive Relief As His
                Allegations Are Premised On His Palpably Meritless Accommodation Claim....14

    **F.**    Dr. Giurca Cannot State A Claim For
                Intentional And Negligent Infliction of Emotional Distress ...............................15

CONCLUSION..............................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Associated Press,*
  2003 WL 22232967 (S.D.N.Y.,2003) ..................................................................12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................7, 8

*Boyd v. Harding Acad. of Memphis, Inc.,*
  88 F.3d 410 (6th Cir. 1996) ...................................................................................10

*Brodt v. City of New York,*
  4 F.Supp.3d 562 (S.D.N.Y. 2014)........................................................................13

*Cabrera v. Schafer,*
  178 F.Supp.3d 69 (E.D.N.Y. 2016).....................................................................4, 8

*Civiletti v Independence Sav Bank,*
  No. 96-01831, 236 A.D.2d 436 (2 Dep't. Feb. 10, 1997) ....................................10

*Cortec Indus., Inc. v. Sum Holding L.P.,*
  949 F.2d 42 (2d Cir. 1991) ......................................................................................7

*D. Penguin Bros. v. City Nat. Bank,*
  No. 13 CIV. 0041 TPG, 2014 WL 982859 (S.D.N.Y. Mar. 11, 2014) ....................8

*Dolter v. Wahlert High Sch.,*
  483 F. Supp. 266 (N.D. Iowa 1980) ......................................................................10

*Frantti v. New York,*
  414 F.Supp.3d 257 (N.D.N.Y., 2019) ...................................................................15

*Garcia v. New York State,*
  2005 WL 2581926 (S.D.N.Y.,2005) ......................................................................14

*Gilani v. National Ass'n of Securities Dealers, Inc.,*
  No. 96 Civ. 8070, 1997 WL 473383 (S.D.N.Y. Aug.19, 1997) ...........................15

*Hughes v. St. James Community Hosp., Inc.*
  2009 WL 1476706  (Mont. 2009) ..........................................................................11

*Hussein v. Hotel Employees & Rest. Union, Local 6,*
  108 F. Supp. 2d 360 (S.D.N.Y. 2000) ...................................................................12

ii

*Hussein v. The Waldorf-Astoria*,
    134 F. Supp. 2d 591 (S.D.N.Y. 2001) ............................................................................12

*Ibraheem v. Wackenhut Servs., Inc.*,
    29 F. Supp. 3d 196 (E.D.N.Y. 2014) ...................................................................... 16, 17

*Joglo Realties, Inc. v. Seggos*,
    229 F.Supp.3d 146 (E.D.N.Y. 2017) .................................................................... 4, 8

*Kajoshaj v. New York City Dep't of Educ.*,
    543 F. App'x 11 (2d Cir. 2013) ..............................................................................9

*Kovich v. Manhattan Life Ins. Co.*,
    640 F.Supp. 134 (S.D.N.Y. 1986) ......................................................................... 16, 17

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) ..................................................................................8

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*,
    570 F.3d 471 (2d Cir. 2009) ..................................................................................8

*Lopez v. Lopez*,
    997 F.Supp.2d 256 (D.N.J. 2014) .......................................................................10

*Lydeatte v. Bronx Overall Economic Development Corp.*,
    2001 WL 180055 (S.D.N.Y. 2001) .................................................................... 15, 16

*Lytle v. JPMorgan Chase*,
    No. 08 CIV. 9503 DAB JLC, 2012 WL 393008 (S.D.N.Y. Feb. 8, 2012) ...........10

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007) ...................................................................8

*Mercado, Quilichini v. U.C.P.R.*,
    No. RE-90-577, 1997 WL 878471 (P.R. June 27, 1997) ......................................11

*Moore v. City Colleges of Chicago - Olive-Harvey Coll.*,
    No. 16 C 5208, 2018 WL 4222878 (N.D. Ill. Sept. 5, 2018) ...............................10

*Mortise v. U.S.*,
    102 F.3d 693 (2d Cir.1996) ..................................................................................16

*Murphy v. Am. Home Prod. Corp.*,
    58 N.Y.2d 293 (1983)............................................................................................15

*Naughright v. Weiss*,
    826 F.Supp.2d 676 (S.D.N.Y. 2011).....................................................................15

*Nieblas-Love v. New York City Housing Authority*,
　165 F.Supp.3d 51 (S.D.N.Y. 2016) .................................................................... 15, 16

*Overall v. Ascension*,
　23 F.Supp.3d 816 (E.D.Mich. 2014) .......................................................................5

*Parker-Bigback v. St. Labre School*,
　7 P.3d 361 (Mont. 2000) ........................................................................................10

*Ravina v. Columbia Univ.*,
　No. 16-CV-2137 (RA), 2019 WL 1450449 (S.D.N.Y. Mar. 31, 2019) ................14

*Richards v. Goord*,
　No. 9:04-CV-1433, 2007 WL 201109 (N.D.N.Y. Jan. 23, 2007) .......................5, 8

*Riscili v. Gibson Guitar Corp.*,
　2007 WL 2005555 (S.D.N.Y. 2007) .......................................................................15

*Shapiro-Gordon v. MCI Telecommunications Corp.*,
　810 F. Supp. 574 (S.D.N.Y. 1993) ..........................................................................9

*Sharabura v. Taylor*,
　2003 WL 22170601 (E.D.N.Y. 2003) ...............................................................16, 17

*Soliman v. City of New York*,
　2017 WL 1229730 (E.D.N.Y. 2017) .................................................................16, 17

*Vaughn v. American Multi Cinema, Inc.*,
　2010 WL 3835191 (S.D.N.Y. 2010) .......................................................................16

*Watkins v. Mercy Medical Center*,
　364 F.Supp. 799 (D.C.Idaho 1973) .........................................................................9

*Weber v. City of New York*,
　973 F.Supp.2d 227 (E.D.N.Y.,2013) ......................................................................12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................7, 8

Hollie J. Paine, The Catholic Merger Crusade, 2 J. Health Care L. & Pol'y 371,
　373-74 (1999) ..........................................................................................................5, 9

iv

## PRELIMINARY STATEMENT

Defendants Good Samaritan Hospital, Bon Secours Charity Health System, and Westchester County Health Care Corporation ("WMCHealth"), named as Westchester Medical Center Health Network,[1] (collectively, the "Hospital"), respectfully submit this memorandum of law in support of Defendants' Motion to Dismiss the Amended Complaint filed by Plaintiff Dr. Giurca.

Plaintiff's claims against the Hospital for religious discrimination, retaliation, failure to accommodate, injunctive relief, and infliction of emotional distress are based on a false premise – that Bon Secours Charity Health System's adherence to a widely-disseminated code of conduct, the Ethical and Religious Directives for Catholic Health Care Services ("ERDs"), interferes with Dr. Giurca's religious beliefs. The Amended Complaint alleges that Dr. Giurca objected to the ERDs without ever having read its terms, declined to go forward with an application, and has since been unable to gain employment at the Hospital's facilities.

However, the ERDs have no bearing on any person's ability to practice or believe in a specific religion. The ERDs regulate the conduct of the facility and its staff and govern what care can or cannot be provided at the facility, such as by prohibiting the provision of abortion or sterilization services. The ERDs further recognize that individuals seeking medical services at the facility may adhere to other religions and require non-Catholic pastoral care. It is a code of conduct, nothing more and nothing less. From this fact alone, Plaintiff's claims should be dismissed.

---

[1]     The Westchester County Health Care Corporation is a public benefit corporation originally created to operate the Westchester Medical Center that does business as Westchester Medical Center Health Network.  N.Y. Pub. Auth. Law § 3300 et seq.

The Complaint also does not even allege that the ERDs would somehow influence or conflict with Dr. Giurca's practice of psychiatry, and even if it had, the claims would still be deficient as a matter of law. The manner in which a physician provides his professional services is not protected under Title VII of the Civil Rights Act of 1968 and therefore cannot sustain a claim. Indeed, courts have recognized that an employer may require that its staff adhere to codes of conduct in connection with their professional services.

Dr. Giurca's state law claim for infliction of emotional distress also suffers from additional infirmities requiring dismissal. Among other things, his meritless allegations of discrimination do not constitute extreme and culpable conduct, as required for such a claim.

For these reasons, and as detailed below, the Hospital respectfully requests that the Court dismiss the Amended Complaint in its entirety and with prejudice because Dr. Giurca does not state any cause of action.

## STATEMENT OF FACTS[2]

**The Hospital**

Bon Secours Health System ("Bon Secours") is a Catholic not-for-profit health system that includes Good Samaritan Hospital ("Good Samaritan") in Suffern and Bon Secours Community Hospital ("BSCH") in Port Jervis, NY.[3]  *Id.*, ¶ 8. Bon Secours and the facilities within its system, including Good Samaritan Hospital and Bon Secours Community Hospital, are Catholic-affiliated health care providers. *Id.*, ¶ 7-8, 20, 38.

---

[2]    The allegations from the Amended Complaint and exhibits ("Complaint") attached thereto are assumed to be true solely for the purposes of this motion to dismiss. Declaration of Michael J. Keane, ("Keane Decl."), Exhibit 1.

[3]    Plaintiff has also sued WMCHealth based on the allegation that it is a network of hospitals that "purchased" Good Samaritan Hospital, Saint Anthony Hospital and Bon Secours Charity Hospital from the Sisters of Bon Secours. WMCHealth did not "purchase" these hospitals, but the erroneous statement is not relevant for purposes of this motion. Complaint, ¶ 9, 45.

**The Allegations In The Amended Complaint**

Dr. Giurca is a psychiatrist who previously sought a position at Bon Secours in 2016. Complaint, ¶ 11.  However, when Bon Secours offered him a full-time position at Bon Secours Community Hospital, he declined in favor of a full time position at Orange Regional Medical Center.  *Id.*, ¶ 12.  While Bon Secours nevertheless offered him an application for "moonlighting opportunities," he once again did not proceed with the application, this time because he objected to the requirement that Bon Secours physicians with privileges adhere to the ERDs.  *Id.*, ¶ 12, 16, 19, 30; Exhibits B, § 4 ("Your Employment is subject to the policies, procedures, and guidelines of the PC and Hospital including but not limited to the Bylaws and Rules and Regulations. . . as well as the Ethical and Religious Directives of the Roman Catholic Church").  As Bon Secours told Dr. Giurca, "Bon Secours is [a] faith[-]based organization, created by the sisters of Bon Secours, and the value[s] of the organization are in the line with catholic values of serving the poor and most vulnerable categories of society.  The values do not impeded with (sic) your practice as psychiatrist and are confirm (sic) the laws of New York and [the] US."  *Id.*, ¶ 20.  To that end, the professional services agreement that Dr. Giurca ultimately received required that all medical services at the facility "be provided in accordance with (i) the Ethical and Religious Directives for Catholic Health Care Services. . . [and] the administrative and ethical policies of the Hospital, including the Bon Secours Health System Code of Conduct. . ."  *Id.*, Exhibit C, § 1.2.

Dr. Giurca alleges that, even though he has never read the ERDs and would accept "directives [that] consisted of a code of conduct," he believed that he was religiously prohibited from subscribing" to its terms.  *Id.*, ¶ 19, 49.  Based on this belief, Dr. Giurca asserts that he asked Bon Secours to entirely remove the requirement that Dr. Guirca adhere to the ERDs.  *Id*., ¶

22.   Bon Secours did not agree, and as a result, Dr. Giurca alleges that Bon Secours discriminated against him based on his religion and failed to accommodate him.  *Id.*, ¶ 23-25.

Dr. Giurca continued to work at his full-time position in Orange Regional Medical Center until October 8, 2018, when that hospital terminated Dr. Giurca and barred him from entering its facilities.[4]   That same month, Dr. Giurca alleges he contacted another hospital within Bon Secours, Good Samaritan, to express interest in a position.   Complaint, ¶ 33.   He spoke to various people and submitted his resume, and on March 5, 2019, spoke to Tera Colavito regarding a position in emergency psychiatry and consultation-liaison.  *Id.*, ¶ 36-38.   During that conversation, Ms. Colavito informed Dr. Giurca that the position for which he was applying had already been filled.   She further referred to his prior issue with "the contractual terms relating to the adherence to the Directives of the Roman Catholic Church," informed Dr. Giurca that "Bon Secours was still affiliated with the Catholic Church," and said she would call Dr. Giurca back.  *Id.*, ¶ 38.   When she took more than a day to call him, Dr. Giurca sent a follow up email.  *Id.*   She responded within ten minutes, asking if he could clarify his prior objections to the Bon Secours application because she understood "you backed out previously because you did not want to work for a Catholic Facility."  *Id.*, ¶ 39.   She told him that, if that was untrue, "I stand corrected. Our affiliation has not changed so I just didn't want to pursue anything further if that remained a possible concern for you.   I will review further and be in touch."  *Id.*   Dr. Giurca reiterated his interest, and for the first time, requested a copy of the ERDs.  *Id.*, ¶ 49.   Ms. Colavito

---

[4]      Keane Decl., Exhibit 4, ¶ 64; Exhibit 5, p. 4. Defendants note that Dr. Giurca previously filed a lawsuit against his former employer before the United States District Court, Southern District of New York. *Id.*, Exhibit 4. Despite receiving two opportunities to amend his complaint, Dr. Giurca failed to cure his pleading deficiencies, and, on the defendant's motion to dismiss, Judge Stanton dismissed Dr. Giurca's lawsuit as deficient. *Id.*, Exhibit 5. The Court may consider Dr. Giurca's pleadings and Judge Stanton's Order on this motion. *See Joglo Realties, Inc. v. Seggos*, 229 F.Supp.3d 146, 150 (E.D.N.Y. 2017) (quoting *HSA Residential Mortg. Servs. of Tex. v. Casuccio*, 350 F.Supp.2d 352, 361 (E.D.N.Y. 2003) ("While ordinarily a court may consider only facts pled in a complaint and documents attached to the complaint when deciding a motion to dismiss, '[i]t is proper to take judicial notice of pleadings from other lawsuits attached to a defendant's motion to dismiss.'"); *Cabrera v. Schafer*, 178 F.Supp.3d 69, 73 (E.D.N.Y. 2016) (finding courts may take judicial notice of orders to establish the fact of such litigation).

4

subsequently confirmed that all positions had been filled and advised that she would call him if something opened up.  *Id.*, ¶ 51.

A few months later, Dr. Giurca alleges he heard another position was open at Good Samaritan and contacted the Advanced Clinical Recruiter – Human Resources for more information.  *Id.*, ¶ 54.  He was advised that the department decided not to proceed with his candidacy for that position.  *Id.*, ¶ 54.

**ERDS**

The ERDs are a code of conduct that govern the operation of a Catholic healthcare facility.  *See* Keane Decl., Exhibit 2.[5]  *See also* Hollie J. Paine, The Catholic Merger Crusade, 2 J. Health Care L. & Pol'y 371, 373-74 (1999).  They consist of seventy-two directives, which are broken into six categories.  For the Court's convenience, Defendants have prepared a document that breaks out the directives from the official publication, and clearly lists all of the directives that fall under each of the six categories.  *See* Keane Decl., Exhibit 3.  The categories and their contents are as follows:

 (1) "the social responsibility of Catholic health care services" -- nine directives requiring health care facilities to adopt the directives, require its employees to follow the directives, treat employees fairly, promote medical research, use medical services responsibly, serve vulnerable members of society, and follow specific rules in opening/closing a facility or modifying the mission of the facility (Directives 1-9).

---

[5] The ERDs are a widely disseminated document of which Courts regularly take judicial notice.  *See e.g.*, *Overall v. Ascension*, 23 F.Supp.3d 816, 825 (E.D.Mich. 2014) ("The Ethical and Religious Directives are widely disseminated and must be followed by all Catholic Health Organizations. As the Ethical and Religious Directives are from a source whose accuracy cannot reasonably be questioned, the Court may take judicial notice of this document.").  This Court can also consider the ERDs on this motion because they are extensively discussed and relied upon in the Complaint.  *See Richards v. Goord*, No. 9:04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007).  A full copy is available on Bon Secours Health Systems' website.  *See* Keane Decl., Exhibit 2. http://www.charity.bonsecours.com/uploads/public/docum ents/assets/Nov2014Student_Orientation/Ethical-Religious-Directives-Catholic-Health-Care-Services-fifth-edition-2009.pdf (last visited February 19, 2020).

(2) "the pastoral and spiritual responsibility of Catholic health care" -- thirteen directives requiring health care facilities to provide pastoral care for all consistent with each person's religious and spiritual needs, and setting forth provisions for providing Catholic pastoral care where appropriate and requested (Directives 10-22).

(3) "the professional-patient relationship" -- fifteen directives addressing the treatment of patients at the facility, requiring, *inter alia*, that the facility respect human dignity and patient confidentiality, obtain informed consent for all non-emergency medical services, establish an ethics committee, and comply with patients' free and informed healthcare decisions so long as those decisions do not seek medical services that are otherwise prohibited under the ERDs (Directives 23-37).

(4) "issues in care for the beginning of life" -- seventeen directives addressing the health care services that facilities may provide regarding conception, prohibiting, for instance, the destruction of human embryos, participation in surrogate arrangements, sterilization services, promotion of contraceptives, and the provision of abortions (Directives 38-54).

(5) "issues in care for the seriously ill and dying" -- twelve directives regulating the services to be provided to patients in danger of dying, requiring, among other things, that patients receive spiritual support (if wanted) and the opportunity to discuss their condition with family, and forbidding euthanasia (Directives 55-66).

(6) "forming new partnerships with health care organization and providers directives that govern the operation of a health care facility" -- six directives that address the manner in which a health care facility may enter into partnerships with other health care facilities (Directives 67-72).

Nothing in these directives requires that any individual practice, agree with, or profess a belief in Catholicism.  In fact, out of all the seventy-two directives, only those in the third, fourth, and fifth categories directly impact the physicians at the facility, and those directives regulate the types of medical services that physicians may offer at the facility and require that patients receive respect and treatment with informed consent.

**Plaintiff's Lawsuit**

Dr. Giurca commenced this lawsuit on or about August 19, 2019 asserting claims for religious discrimination, an injunction, and infliction of emotional distress.  Docket Entry. No. 1. The Hospital sought leave to move to dismiss, and, on February 10, 2020, Dr. Giurca amended his pleading.

In the Amended Complaint, Dr. Giurca asserts five claims: religious discrimination under Title VII, failure to accommodate under Title VII, retaliation under Title VII, an injunction compelling the Hospital to grant him the "accommodation" that he allegedly requested, and a state law claim for intentional and negligent infliction of emotional distress.  *See* Complaint.

## ARGUMENT

### THE COMPLAINT MUST BE DISMISSED
### BECAUSE DR. GIURCA CANNOT STATE A CLAIM FOR RELIEF

**A.    The Legal Standard**

Pursuant to Fed. R. Civ. P. 12(b)(6), a court is empowered to dismiss for failure to state a cause of action.  On such a motion to dismiss, the court must determine whether the factual allegations "plausibly suggest an entitlement to relief."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); s*ee Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (finding courts may review the pleadings as well as documents referenced in the complaint and documents that plaintiffs knew of when bringing suit).  However, "[t]hreadbare recitals of the elements of a

7

cause of action, supported by mere conclusory statements, do not suffice." *D. Penguin Bros. v. City Nat. Bank*, No. 13 CIV. 0041 TPG, 2014 WL 982859, at *3 (S.D.N.Y. Mar. 11, 2014), *aff'd*, 587 F. App'x 663 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Twombly*, 550 U.S. at 555 (the "factual allegations must be enough to raise a right to relief above the speculative level"); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 128-129 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009). Only a "plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009).

In disposing a Rule 12(b)(6) motion, a court may consider any documents relied on and/or referenced in the pleading. *See Richards v. Goord*, No. 9:04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007). A court may also consider extraneous documents of which it can take judicial notice in order to determine what the documents stated. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (permitting consideration of extraneous documents where they "are relevant not to prove the truth of their contents but only to determine what the documents stated"). This includes pleadings and judicial decisions from other lawsuits. *See Joglo Realties, Inc. v. Seggos*, 229 F.Supp.3d 146, 150 (E.D.N.Y. 2017) (quoting *HSA Residential Mortg. Servs. of Tex. v. Casuccio*, 350 F.Supp.2d 352, 361 (E.D.N.Y. 2003) ("While ordinarily a court may consider only facts pled in a complaint or documents attached to the complaint when deciding a motion to dismiss, '[i]t is proper to take judicial notice of pleadings from other lawsuits attached to a defendant's motion to dismiss.'"); *see Cabrera v. Schafer*, 178 F.Supp.3d 69, 73 (E.D.N.Y. 2016) (finding courts may take judicial notice of orders to establish the fact of such litigation).

As detailed below, Plaintiff's Complaint must be dismissed in its entirety because it fails to state any plausible cause of action.

8

**B.    Dr. Giurca Cannot State A Religious
Discrimination Claim Under Title VII Based On The ERDs**

Dr. Giurca's first cause of action, alleging religious discrimination under Title VII, lacks

any legal basis entitling him to relief.  To state claim for religious discrimination under Title VII,

a plaintiff must show that: (1) he "has a sincere religious belief that conflicted with an

employment requirement; (2) [he] informed [his] prospective employer of [his] religious views

or practices; and (3) [he] was not hired because of [his] inability to comply with the conflicting

employment requirement." *Shapiro-Gordon v. MCI Telecommunications Corp.*, 810 F. Supp.

574, 578 (S.D.N.Y. 1993); *see Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 14

(2d Cir. 2013).

Dr. Giurca's claim is based on the faulty premise that the Hospital's adherence to the

ERDs interfered with his right to believe in his chosen religion.  The ERDs, however, are a code

of conduct that regulate actions, such as the ability to provide abortion or sterilization-related

services at a Catholic facility, not personal beliefs.  *See* Keane Decl., Exhibits 2 and 3; *see also*

Hollie J. Paine, The Catholic Merger Crusade, 2 J. Health Care L. & Pol'y 371, 374 (1999); *see*

*Watkins v. Mercy Medical Center*, 364 F.Supp. 799, 803 (D.C.Idaho 1973) (finding hospital, by

way of its requirement that physicians adhere to the ERDs, "was not trying to require [the

physician] to adopt their religious beliefs, for he is free to believe that sterilization services

should be offered and performed, but the hospital also has the right to believe that such services

should not be performed and the right to prohibit the use of its facilities for those purposes").  As

such, the ERDs have no bearing on any individual's ability to practice any religion, and the

Hospital's requirement that its employees and physician with privileges adhere to it at its facility

cannot constitute a "conflict" as required for a discrimination claim.

In fact, the Complaint also does not even allege that adherence to the ERDs could somehow influence or conflict with Dr. Giurca's provision of psychiatric services. Even if Dr. Giurca had made such an allegation, however, his claim would still be deficient as a matter of law. The manner in which Dr. Giurca performs his professional medical services is not a protectable interest under Title VII, which specifically encompasses religious observance, practice, and belief. Indeed, entities, including religious-affiliated organizations, are permitted to require that their staff comply with a code of conduct. *See Lytle v. JPMorgan Chase*, No. 08 CIV. 9503 DAB JLC, 2012 WL 393008, at *23 (S.D.N.Y. Feb. 8, 2012), report and recommendation adopted sub nom, No. 08 CIV. 9503 DAB, 2012 WL 1079964 (S.D.N.Y. Mar. 30, 2012), aff'd, 518 F. App'x 49 (2d Cir. 2013) (finding it is not discriminatory to fire an employee for refusing to affirm the employer's code of conduct); *see also Civiletti v Independence Sav Bank*, No. 96-01831, 236 A.D.2d 436, 436 (2 Dep't. Feb. 10, 1997) (finding employer can require employees to comply with its code of ethical conduct); *see also Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 414 (6th Cir. 1996) (finding no discrimination where employee's action, extramarital sexual activity, violated the code of conduct that teachers at Catholic institution are required to follow); *Parker-Bigback v. St. Labre School*, 7 P.3d 361, 364 (Mont. 2000) (finding no discrimination based on rules of conduct in Catholic institution's employment agreement); *see also Moore v. City Colleges of Chicago - Olive-Harvey Coll.*, No. 16 C 5208, 2018 WL 4222878, at *7 (N.D. Ill. Sept. 5, 2018) (holding employer did not discriminate in terminating employee for violating its ethics policy and work rules); *Lopez v. Lopez*, 997 F.Supp.2d 256, 271 (D.N.J. 2014) (finding employer's requirement that employee adhere to code of conduct was not discriminatory); *see generally Dolter v. Wahlert High Sch.*, 483 F. Supp. 266, 270 (N.D. Iowa 1980) ("The Court has no quarrel. . . with [the Catholic school] defendant's contention that it can define moral precepts and prescribe a code of moral

10

conduct that its [employees]. . . must follow"); *Mercado, Quilichini v. U.C.P.R.*, No. RE-90-577, 1997 WL 878471 (P.R. June 27, 1997) (finding trial court did not err in applying the rules of a Catholic University that required professors, as an employment condition, to abide by the norms, values, and tenets of the Catholic Church).[6]

Dr. Giurca also cannot state a viable cause of action because he does not show that he was denied employment or privileges because of his religious beliefs.  The Complaint alleges that he refused to sign an employment agreement with the Hospital because he did not want to adhere to the ERDs.  This is a legitimate reason for denying him privileges or employment because the Hospital is permitted to require that its employees and physicians comply with a code of conduct.  *See supra*, p. 10-11.  While Dr. Giurca also asserts discrimination because "Defendants even refused to disclose" the ERDs to him, the ERDs are fully available to the public on the Hospital's website, and Dr. Giurca did not even request a copy until after he was told the position had been filled.  Complaint, ¶ 49.

Accordingly, Dr. Giurca has not set forth any facts to support a claim for religious discrimination and the cause of action must be dismissed.

**C.**     **Dr. Giurca Cannot State A Claim For Failure To**
          **Provide A Reasonable Accommodation Based On The ERDs**

Dr. Giurca's second cause of action, alleging failure to provide a reasonable accommodation under Title VII, is similarly deficient as it is premised on the same flawed claim that adherence to the ERDs would prevent Dr. Giurca from professing his religion.  Complaint, ¶¶ 17, 18.  To state a claim for a failure to provide a reasonable accommodation under Title VII,

---

[6]        Additionally, in *Hughes v. St. James Community Hosp., Inc.*, the Court held that a hospital had a right to discharge a physician who violated the Ethical and Religious Directives of the Hospital.  2009 WL 1476706, at *1 (Mont. 2009).  While it is not precedent, this case is certainly persuasive and supports a hospital's ability to require adherence to an ethical code of conduct.

a plaintiff bears the burden of showing that he or she has a bona fide religious belief that conflicts with an employment requirement, he or she informed the defendant of the conflict, and the plaintiff suffered an adverse employment action as a result. *See Weber v. City of New York*, 973 F.Supp.2d 227, 260 (E.D.N.Y.,2013) (finding no employment requirement conflicted with plaintiff's religious beliefs where the plaintiff was not prevented from complying with his religion); *see Hussein v. The Waldorf-Astoria*, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd sub nom., 31 F. App'x 740 (2d Cir. 2002); *see also Hussein v. Hotel Employees & Rest. Union, Local 6*, 108 F. Supp. 2d 360, 370 (S.D.N.Y. 2000) ("Title VII does not require the accommodation of personal preferences, even if wrapped in religious garb."), vacated on other grounds, 14 Fed. Appx. 39 (2d Cir. 2001).

Dr. Giurca does not state a claim because he does not plead any conflict between the ERDs and his religion. As set forth *supra*, the ERDs have no bearing on any person's ability to practice his or her religion. It is a code of conduct, nothing more and nothing less. Dr. Giurca does not even explain how any of the ERD's could interfere with his religious practice or bar him from performing any particular religious tenant. *See e.g.*, *Bailey v. Associated Press*, 2003 WL 22232967, at *8 (S.D.N.Y. 2003) (finding no conflict where plaintiff offered no explanation as to how his religious belief conflicted with his work obligations). Accordingly, because Dr. Giurca does not meet his burden of pleading that the Hospital's adherence to the ERDs interfered with his religious beliefs, his claim must be dismissed.

**D.**   **Dr. Giurca Cannot State A Claim For Retaliation Under Title VII**

Dr. Giurca's third cause of action for retaliation also does not meet the pleading requirements. To state a claim for retaliation under Title VII, a plaintiff must allege 1) "'participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3)

an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action.'" *Brodt v. City of New York*, 4 F.Supp.3d 562, 571 (S.D.N.Y. 2014) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir.2013) (internal quotations omitted).

Dr. Giurca asserts that the Hospital blacklisted him from employment at its facilities because he had questions about the ERDs, asked to review the ERDs, and asked the Hospital to allow him to work at the facility without adhering to the ERDs. Complaint, ¶ 42. These allegations are inadequate for three significant reasons. First, as set forth above, Dr. Giurca does not have an accommodation or discrimination claim based on the Hospital's employment requirement under Title VII. Second, as also detailed above, Dr. Giurca's alleged request that the Hospital alter its employment requirement is not a protected interest under Title VII. Third, there is no casual connection between Dr. Giurca's questions about the ERDs or belated request to review the ERDs, and the fact that he has not obtained a position at the Hospital. See *Brodt*, 4 F.Supp.3d at 571 (finding no nexus between the alleged protective activity and the purported adverse event). According to the Complaint, after Dr. Giurca asked about the ERDs with respect to a position at a hospital within Bon Secours, the Hospital was still amenable to enter into an employment agreement with him. It was Dr. Giurca who declined to continue with the process when the position was offered to him. Complaint, ¶ 29-32. Then, when he sought a different position at Good Samaritan, he was directed to speak to a particular person, but the position had already been filled by the time he spoke to her and clarified his interest in working for a Catholic facility. Complaint, ¶ 38-39. It was only at that point, when the position was filled, that Dr. Giurca finally requested a copy of the ERDs. Complaint, ¶ 49. Given these allegations, there is

13

no plausible casual connection between Dr. Giurca's questions or request and his inability to secure a position at the Hospital. Therefore the retaliation claim cannot be sustained.

**E.      Dr. Giurca Is Not Entitled To Injunctive Relief As His**
**Allegations Are Premised On His Palpably Meritless Accommodation Claim**

Dr. Giurca further seeks an injunction ordering the Hospital to enter into an employment contract with Dr. Giurca and waive any requirement that he comply with the ERDs. To obtain an injunction, "a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2019 WL 1450449, at *15 (S.D.N.Y. Mar. 31, 2019); *see generally Garcia v. New York State*, 2005 WL 2581926, at *1 (S.D.N.Y. 2005) (granting motion to dismiss complaint seeking, *inter alia*, injunctive relief in the form of a change to plaintiff's work schedule, where the complaint failed to state a claim). Injunctive relief is only appropriate where there is a cognizable threat of future legal violations. *See id.*

Dr. Giurca is not entitled to an injunction as an initial matter because he cannot show that he can succeed on the merits. His request is premised on his meritless religious accommodation claim and is therefore deficient for the very same reasons. *See supra*, p. 12-14. Furthermore, even where an accommodation could be warranted – which is not the case here – an individual is not entitled to the specific accommodation that he or she demands. Under Title VII, "'employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee,' as long as the chosen accommodation is effective." *Frantti v. New York*, 414 F.Supp.3d 257, 286 (N.D.N.Y., 2019) (quoting *Atencio v. U.S. Postal Serv.*, 198 F. Supp. 3d 340, 356 (S.D.N.Y. 2016)). Dr. Giurca has not shown that the accommodation he demands, *i.e.*, complete waiver of the ERDs, is the only effective solution. Dr. Giurca instead concedes his religion allows him to accept a code of conduct, thus belying any claim that

14

wholesale waiver of the ERDs is necessary.  Complaint, ¶ 49.  Therefore, Dr. Giurca is not entitled to the relief he seeks, and the claim must be dismissed.

**F.     Dr. Giurca Cannot State A Claim For**
        **Intentional And Negligent Infliction of Emotional Distress**

Dr. Giurca also alleges a state law claim for intentional and negligent infliction of emotional distress.  The elements for intentional infliction of emotional distress and negligent infliction of emotional distress vary, but both require a plaintiff to plead (1) extreme and outrageous conduct, (2) severe emotional distress, and (3) a causal connection between the conduct and alleged injury.  *Lydeatte v. Bronx Overall Economic Development Corp.*, 2001 WL 180055, at *1 (S.D.N.Y. 2001); *see Nieblas-Love v. New York City Housing Authority*, 165 F.Supp.3d 51, 77 (S.D.N.Y. 2016).  A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Murphy v. Am. Home Prod. Corp.*, 58 N.Y.2d 293, 303 (1983); *see Naughright v. Weiss*, 826 F.Supp.2d 676, 697 (S.D.N.Y. 2011).  New York courts are particularly reluctant to find extreme and outrageous conduct in the employment context and therefore generally require a showing of improper physical contact or a pattern of harassment.  *Riscili v. Gibson Guitar Corp.*, 2007 WL 2005555, at *4 (S.D.N.Y. 2007) (granting motion to dismiss); *Gilani v. National Ass'n of Securities Dealers, Inc.*, No. 96 Civ. 8070, 1997 WL 473383, at *14 (S.D.N.Y. Aug.19, 1997); *Kovich v. Manhattan Life Ins. Co.*, 640 F.Supp. 134, 136 (S.D.N.Y. 1986); *Soliman v. City of New York*, 2017 WL 1229730, at *10 (E.D.N.Y. 2017); *see also Sharabura v. Taylor*, 2003 WL 22170601, at *4 (E.D.N.Y. 2003) (granting motion to dismiss allegations that employer treated employee unfairly).

In addition to these elements, intentional infliction of emotional distress requires a plaintiff to plead "intent to cause, or disregard of a substantial probability of causing, severe

15

emotional distress." *Lydeatte v. Bronx Overall Economic Development Corp.*, 2001 WL 180055, at *1 (S.D.N.Y. 2001) (quoting *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)).

A claim for negligent infliction for emotional distress also imposes an additional element: requiring a plaintiff to establish "'breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety'" *Nieblas-Love v. New York City Housing Authority*, 165 F.Supp.3d 51, 77 (S.D.N.Y. 2016) (quoting *Walia v. Holder*, 59 F.Supp.3d 492, 512 (E.D.N.Y. 2014)); *Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014); *Vaughn v. American Multi Cinema, Inc*., 2010 WL 3835191, at *5 (S.D.N.Y. 2010) (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir.2000)).  "The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. U.S*., 102 F.3d 693, 696 (2d Cir.1996)

Applying these standards here, Dr. Giurca's state claim must be dismissed as a matter of law.  His emotional distress claim stems from the following allegations: (1) Dr. Giurca previously endured traumatic religious persecution in Romania, (2) he told the Hospital he was not Catholic and did not want to adhere to the ERDs, and (3) he and his family have been re-traumatized because the Hospital has not hired him.  Taken together, these allegations do not constitute extreme and outrageous conduct.  They are premised on Dr. Giurca's entirely meritless Title VII claims and therefore should be dismissed on that basis alone.  There also are no allegations that Dr. Giurca underwent any physical harm or a pattern of harassment.  *Ibraheem v. Wackenhut Services, Inc*., 29 F.Supp.3d 196, 215 (E.D.N.Y 2014) (finding allegations that an individual may have been subjected to employment discrimination, hostility, or some harassment inadequate); *see Kovich v. Manhattan Life Ins. Co.*, 640 F.Supp. 134, 136 (S.D.N.Y. 1986)

(finding allegation that employer blackballed plaintiff from a particular area did not meet the standard).

Further, there are no facts showing either an intent to cause emotional distress as required to sustain a claim for to intentional infliction of emotional distress. *Soliman v. City of New York*, 2017 WL 1229730, at *10 (E.D.N.Y., 2017); *Sharabura v. Taylor*, 2003 WL 22170601, at *4 (E.D.N.Y.,2003) (granting motion to dismiss allegations that employer treated employee unfairly). Dr. Giurca does not even assert that the Hospital knew what religion he practiced or was aware of his purported past persecution in Romania. Dr. Giurca similarly has not set forth any facts showing that the Hospital breached a duty that unreasonably endangered or caused him to fear for his safety, as required to sustain a claim for negligent infliction of emotional distress. *Id*. Dr. Giurca only alleges that he and his family somehow felt re-traumatized with memories of their past religious persecution because the Hospital has not called Dr. Giurca about any job openings.

Additionally, under either theory of infliction of emotional distress, there is no causal connection between Dr. Giurca's past religious persecution trauma and the conduct in dispute, *i.e.* the Hospital's requirement that its physicians with privileges comply with a particular code of conduct. Accordingly, Dr. Giurca's state claim should be dismissed.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that the Court dismiss the

Amended Complaint in its entirety with prejudice, and for such other and further relief as this

Court deems just, necessary and proper.

Dated: Great Neck, New York
      March 26, 2020

                    GARFUNKEL WILD, P.C.
                    *Attorneys for Defendants*

                    By:        */s/ Michael J. Keane*
                            Michael J. Keane
                            Gillian Barkins
                111 Great Neck Road
                Great Neck, New York 11021
                (516) 393-2200